Hillsborough,  
Dec. 1, 1931.

ARCHIE F. PRECOURT *v.* FRANCES E. DRISCOLL.

SUSAN B. PRECOURT *v.* SAME.

*Robert W. Upton,* (by brief and orally), for the plaintiffs.

*Wyman, Starr & Booth* (*Mr. Wyman* orally), for the defendant.

ALLEN, J. I. In cross-examination the plaintiff Susan was asked if she remembered having a certain question put to her and giving a certain answer to it in her deposition which had been taken. Objection was made on the ground that she should first be asked if it was her deposition, having it shown to her, and her attention then called to the part of it upon which she was being examined. The inquiry was allowed and the plaintiffs excepted.

As stated, only two points of objection were made, one, that the witness should identify the deposition, and the other, that she should not be required to state her memory about its contents until they were shown to her.

As to the first point, the error, if there was any, became cured by the subsequent testimony of the witness that the deposition bore her signature and was hers. In the discussion between court and counsel no claim was made that it should first be put in evidence as an exhibit before its use, and any requirement to that effect was therefore waived. The deposition might be used as though it had been formally received in evidence. Having been once admitted as an exhibit, a deposition becomes evidence as to all its contents so far as they are competent. It follows that the only question the exception now raises is if a witness must be shown a question and answer in his deposition before being called upon to say what his memory is about them.

In such an inquiry the contents of the deposition are not primarily sought to be shown. The deposition itself, proof of which as an exhibit was here waived, is the evidence of them. The inquiry tests the memory of the witness. If incidentally or in addition it is sought to contradict the witness by his statements in the deposition, it may be insisted upon that they be read. But this is a different matter from the witness' right to read the deposition before stating his recollection about its contents. When writings are used to test or refresh recollection, they are not required to be made exhibits before their use for the purpose. It is only when the witness fails to recollect after reading them that they may be received in evidence, and then only if there is testimony of the truth of their statements. *Pinkham* v. *Benton*, 62 N. H. 687, 690, and cases cited; *Graves* v. *Railroad*, 84 N. H. 225, 227; *Richardson* v. *Railroad*, 80 N. H. 370, 372; *State* v. *Iacovone, ante*, 207. If the writings are not needed to help recollection, there is no occasion even to show them to the witness.

If the purpose of the use of the deposition was to contradict the witness' testimony, no point was made at the trial of the parol evidence rule. It was not claimed that the contents of the deposition

could become evidence only as they were read into the record of the trial. The objection made had to do with the manner in which the witness might be examined with reference to the deposition, and not with the manner of proving the contents of the deposition. The particular question objected to being if the witness remembered testifying in a certain way in the deposition, whether she needed to see it before recalling obviously depended upon her memory, and her right to see it as an aid to memory was not shown until need of such aid appeared. Whether there was occasion to test the witness' memory in respect to the contents of the deposition, is not within the present inquiry, since no issue on the point was made. The exception is overruled.

II. On the issue of contributory negligence, the plaintiffs excepted to the instruction that the burden of proof was on them to show their due care. The instruction enforced the rule prevailing in Vermont where the cause of action accrued. It is claimed that the local rule governs. By the local statute (P. L., c. 328, s. 13) in actions for injury to person or personalty "contributory negligence . . . shall be a defense, and the burden of proving the same shall be upon the defendant."

Argument is made that the statute prescribes an unvarying rule of procedure without distinction between actions arising locally and elsewhere. The statute is not to receive such a rigid construction. In *Murphy* v. *Railroad*, 77 N. H. 573, it was held inapplicable to actions pending at its passage. And no reason occurs why it is not to be held subject to the common law of comity. No policy against the enforcement of comity is expressed or appears. When no domestic interest contravenes, foreign law will be invoked to govern foreign transactions regardless of local statutes as well as of local common law. Examples of this extent of comity's prevalence are found in *Corning* v. *Abbott*, 54 N. H. 469, and *Cleveland Machine Works* v. *Lang*, 67 N. H. 348.

In further argument it is asserted that the statute is one of remedial law and that as comity does not go so far as to permit the entry of foreign law in respect to procedural matters, the local law controls. The issue is drawn how far foreign law will be adopted under comity in respect to proof of contributory negligence.

The general principle that remedial rights are determined by local law is too well established to need discussion. Enforcement of foreign law by giving the same and full remedy available in the foreign jurisdiction is not undertaken. But when the remedial law of the foreign

jurisdiction is so associated and incorporated with its substantive law as to be necessary in order to maintain and validate it, a question of difficulty is presented. If the local remedy results in destroying or altering the foreign cause of action, the ends of comity are not only defeated but rights are given or liabilities imposed in respect to a foreign transaction affecting its legal character. One way to avoid such a result is to take no jurisdiction, as was done in *Crippen* v. *Laighton*, 69 N. H. 540. The other way is to make an exception to the rule applying the local law when the foreign remedy is so inseparable from the cause of action that it must be enforced to preserve the integrity and character of the cause and when such remedy is practically available. The vindication of substantive rights should not mean their loss or alteration, and when no local policy is adversely affected, strict adherence to a rule which becomes arbitrary and works injustice in a given case may well be dispensed with.

Authority on the point is scanty and its weight is possibly against the proposition. But it would seem that comity may properly recognize it when the situation in a particular case warrants. The "courtesy" of comity should not become discourtesy. If the door is to be opened, the visitor's credentials should be respected. It is not intended to declare any rule going beyond the demands of the particular situation here presented. The policy to apply local remedial law is deeply settled and strongly built. Exceptions to its control must be infrequent and determinable upon their own special features.

Inquiry becomes directed toward the relation between the Vermont law of actionable negligence and its rule placing the burden of proof on the plaintiff to establish his due care.

In pleading it seems uncertain if the declaration must set forth the plaintiff's care. In *Brothers' Administrator* v. *Railroad*, 71 Vt. 48, it was apparently held there was no necessity for it, while in the later case of *Mobus* v. *Waitsfield*, 75 Vt. 122, it was held sufficient if the care was impliedly averred. But the former case is no authority that the care is not an essential element of the action. As the opinion in the case states: "The burden is upon the plaintiff to show that such [the defendant's] negligence was the sole, operating cause of the injury—that no want of due care on the part of the plaintiff helped to produce it."

Other Vermont cases show that contributory negligence is not a defence barring recovery, but its absence is as vital a part of the cause of action as the defendant's fault.

In *Robinson* v. *Cone*, 22 Vt. 213, the court cites with approval what

is said to be the first authoritative declaration of the contributory negligence rule as enunciated in *Butterfield* v. *Forrester*, 11 East 60, in the following statement: "One person being in fault will not dispense with another's using ordinary care for himself. Two things must concur to support this action, an obstruction in the road by the fault of the defendant, and no want of ordinary care to avoid it on the part of the plaintiff." And in the opinion in the *Robinson* case it is said: "In order to sustain the action on the case for negligence of the defendant, it must appear, that the injury did not occur from any want of care on the part of the plaintiff . . ."

In *Trow* v. *Railroad*, 24 Vt. 487, 494, the rule is expressed in these terms: "When there has been mutual negligence, and the negligence of each party was the proximate cause of the injury, no action whatever can be sustained."

In *Willard* v. *Pinard*, 44 Vt. 34, 39, 40, the following language is used: "The [trial] court seems to have omitted the plaintiff's own negligence from among the elements to be considered in finding whether the defendant was guilty of actionable negligence or not, when that element . . . might have been found to have existed and to have been operative to an extent sufficient to show that the negligence of the defendant was contributory merely, and not actionable. The court may have charged . . . that the negligence of the defendant must have done damage to the plaintiff to entitle the plaintiff to recover, but that would not correct the omission of the plaintiff's own conduct as an element in determining the character of the defendant's negligence."

To like effect is the statement of the Vermont law in *Central Vt. Ry* v. *White*, 238 U. S. 507, 512: "But it is a misnomer to say that the question as to the burden of proof as to contributory negligence is a mere matter of state procedure. For, in Vermont, and in a few other states, proof of plaintiff's freedom from fault is a part of the very substance of his case . . . In those states the plaintiff is as much under the necessity of proving one of these facts [of the defendant's negligence and the plaintiff's care] as the other; and as to neither can it be said that the burden is imposed by a rule of procedure, since it arises out of the general obligation imposed upon every plaintiff, to establish all of the facts necessary to make out his cause of action."

It thus appears that the procedural rule in Vermont as to the burden of proof of contributory negligence is indispensable to the enforcement of the substantive rule, and is established in conformity with it. The procedural rule is incidental to it, effectuates it, and in a real sense is

a part and parcel of it. The substantive rule in an exceptional way embraces the procedural rule as an inseparable corollary of it.

The usual distinctions are so merged that if they were made, the substantive rule would become invalid in the alteration of its character which the observance of the distinctions would impose. An element of the cause of action would be destroyed, and the allowance of the non-existence of the element as a defence would not restore it. Whatever technical comparisons may be made, the practical result of enforcement of the local burden of proof rule would be to substitute a domestic cause of action for that sought to be enforced.

The rule of the federal judiciary that state courts shall place the burden of proving the plaintiff's contributory negligence upon the defendant in cases arising under the federal employers' liability act, as announced in *Central Vt. Ry* v. *White, supra,* if no more than a construction of the act, yet shows that local remedies are not of invariable fixity, and recognizes the principle that a particular remedy may be needed to secure the benefit of a substantive right. And the observance of the rule in *Crugley* v. *Railway,* 79 N. H. 276, confirms the local ability to give such remedy. The facility for it is quite self-evident.

The plaintiffs have cited the New York cases of *Sackheim* v. *Pigueron,* 215 N. Y. 62; *Fitzpatrick* v. *Railway,* 252 N. Y. 127, and *Schrader* v. *Railroad,* 254 N. Y. 148, as among those holding that a change in the burden of the plaintiff's proving his care to one of the defendant's proving his negligence has no effect to change the cause of action. Their reasoning may not be accepted and they may not be regarded as authority here. They come to this: there is no cause of action although the defendant is negligent, unless the plaintiff is free from fault; but his fault must be shown to defeat the action. In other words, proof of a necessary element of the cause becomes unnecessary. It would seem simple logic that the element, not being required to be proved, is no longer a necessary one. This being so, a substantive change of the cause would seem to follow.

Under the Vermont law of actionable negligence it is at least a condition of maintaining the action that the plaintiff show himself free from fault. In respect to such a condition the law has been stated to be: "Such a requirement . . . may be interpreted as going to the substance of the cause of action, and in that case plaintiff's due care must be proved, in order to prove defendant's liability, even in a state which makes no such requirement." Am. Law Inst.: Restatement of the Law of Conflict of Laws: Tentative Draft No. 5: S. 629(b). It is thought that expediency, convenience and justice all concur to

make this the better rule, in place of one in effect accomplishing a substitution of local for foreign liability in respect to a foreign transaction.

It remains to consider the contention that the enforcement of the local rule of burden of proof makes no change in the cause of action because it only creates a presumption of due care which is a legitimate substitute for evidence of it. The case of *Duggan* v. *Railway*, 230 Mass. 370 advances and adopts this position. It is said (*p.* 378): "The effect of the rule prescribed by . . . the statute [changing the plaintiff's burden of proving his care to the defendant's burden of proving his fault] is that an injury caused proximately by the negligence of another shall create an inference of due care on the part of the person so injured." And on this premise the court concludes that the statute makes no change in the substantive law of actionable negligence, of which the plaintiff's care is an element.

This can be true only if the inference is one which reason and logic permit. If there is liability without relevant evidence of the plaintiff's care, an irrelevant presumption in lieu of evidence may maintain the appearance and form of the action but it cannot maintain its substance. The argument that evidence of the defendant's negligence authorizes a presumption of the plaintiff's care would seem to be merely an illogical support in avoidance of the appearance of an actual alteration of the structure.

If evidence of the defendant's negligence in fact at the same time tends to show the plaintiff's care, there is a case to be submitted. But without evidence from which such care may be reasonably inferred, the presumption of it amounts to an imposed rule that proof of it is not required. That the presumption may be overcome by evidence, does not meet the logical difficulty. Not thus overcome, the presumption cancels and destroys the element of the plaintiff's care as an issue of the action. The presumption is no more a rational inference than a conclusion that evidence of the plaintiff's care shows the defendant's negligence, or even that a cause of action is probably good because suit has been brought.

"Now the manner of proving the facts is matter of evidence, and, to my mind, is matter of procedure, but the facts to be proved are not matters of procedure; they are the matters with which the procedure has to deal. Here the facts, which are to be proved . . . are not the evidence of those facts. The thing to be proved cannot be evidence of the thing which is to be proved, and therefore . . . this is not a matter of procedure to be governed by the law of the forum." *The Gaetano* and *Maria*, L. R., 7 P. D. 137, 144.

When it is said in the *Duggan* case that the plaintiff to recover must show his due care, and at the same time that the presumption of such care created by the statute is not evidence but "a simple rule to which resort is had when there is a failure of evidence," the need of no proof of an essential element is admitted. Without the presumption the case would fail. Freedom from contributory fault is an essential element, but the presumption dispenses with proof of it. In last analysis, although necessary to be shown, it need not be.

The fiat that evidence of the defendant's negligence shall be evidence of the plaintiff's care clearly defies the canons of legal proof. It is a substitution for proof and not a rule of proof. The *Duggan* case suggests the instinct of self-preservation and its normal promotion of careful conduct towards oneself as a logical basis for the presumption. At the same time it concedes that the legislation is necessary to give the presumption force as a substitute for evidence. And the suggestion is fully answered in *Wright* v. *Railroad*, 74 N. H. 128, in which, among other things, it is said (*p.* 139): "But the proposition that a man acted in one of several different ways in a specific instance, because a jury may happen to think that an ordinarily prudent man would have so acted, is illogical and substitutes pure conjecture for proof. As a matter of substantive law, he is bound to exercise ordinary care; but that legal duty does not become legal evidence that he was free from fault. A plaintiff who has the burden of presenting evidence of that fact does not prove it, in the absence of direct evidence, by a legal presumption. The burden of proof cannot be shifted in that way upon the defendant. Nor as a practical proposition is such a method of reasoning logical. To infer that the plaintiff's intestate exercised the care which the average man of ordinary prudence would probably have exercised, from the mere fact that he belonged to the human species, is to guess that he was, in respect to carefulness of conduct at a particular time, the equivalent of the average man of ordinary prudence, and from this to infer that his voluntary acts were careful and prudent. The minor premise in the syllogism is pure conjecture; hence the conclusion is worthless."

There may be cases where the evidence of the defendant's fault tends to show the plaintiff's care. In such cases the inference of the care is a proper one. But it may not be said that in all cases, or generally, such an inference may rationally be drawn.

The cases relied upon by the plaintiffs overlook the need of the procedural rule to sustain and vindicate the substantive rule. The latter cannot be maintained without it. If to take away or to alter it in

effect and reality takes away or alters the substantive rule, then the cause of action becomes modified. And such is the case here. Neither legislation nor judicial rule may convert conjectures into rational inferences, or give to presumptions which they establish the character and quality of evidence. And when they dispense with such inferences or make such presumptions, they are at least indirectly enacting or declaring substantive rules which modify the nature of the actions they affect.

The plaintiffs place stress on the case of *Kendall* v. *Brownson*, 47 N. H. 186, in which payment of a note sued on was held to be an affirmative defence so as to place the burden of proving payment on the defendant. Sufficient answer to any bearing of the case is found in its dissenting opinion and in the later case overruling it of *Tenney* v. *Knowlton*, 60 N. H. 572. "The burden is on the plaintiff to make out every material fact alleged in his declaration by whatever form of pleading it is put in issue." *Tabor* v. *Judd*, 62 N. H. 288, 290, 291.

The instructions relating to burden of proof were proper.

III. The accident occurred near a bridge. The road descended a long steep hill and curved sharply to the left at its foot, a branch road there running straight ahead. The defendant after coming down the hill and on reaching the curve did not succeed in straightening the course of the car to follow the roadway, and after traveling some four rods beyond the intersection of the main and branch roads the car overturned at the right hand approach to the bridge. The evidence tended to show that an emergency confronted the defendant after the car reached or passed the intersection, that she acted negligently in it, and also that she drove negligently down the hill and thereby created the emergency.

The court instructed the jury generally upon the emergency rule, and the plaintiffs excepted to the statement made in connection with it that "The excitement incident to such situation [of emergency] naturally affects the judgment of a prudent man and has a tendency to prevent it from doing its best work."

The statement was a quotation from the opinion in *Carney* v. *Railway*, 72 N. H. 364, 372, which in its declaration of the emergency doctrine, has not heretofore been questioned, and is merely an expression of a fact known to everyone. Whatever exceptional persons may do, the average man uses better judgment in exercising care when not under excitement, and it is his standard by which due care is to be measured. The exception is overruled.

The plaintiffs also excepted to the instructions about an emergency

because they omitted the statement that there is liability regardless of conduct in an emergency arising out of the party's negligence. No request that the statement be given as an instruction was made, and the issue of giving material and pertinent instructions when sought is not presented. The contention is that the instructions amounted to a misstatement of the law because they implied that if the defendant was careful in the emergency, she was not liable, although her excessive speed and failure properly to control the car in descending the hill brought about the emergency.

Consideration of the charge in its entirety does not show that the jury would gain such an understanding from it. On the contrary, they were fairly and clearly instructed that if there was anything in the defendant's conduct "either in respect to what she did or how she did it, or what she failed to do that compared unfavorably with what you would expect of the average person of ordinary prudence in driving that car at that time, at that place, under the same circumstances which then and there existed," she was negligent and liable if her negligence caused or contributed to cause the accident. Again, it was stated to be her duty to use care in driving, "taking into consideration the character of the hill and the road, the time of day, the conditions of light and weather, the opportunity of vision, the presence or absence of warning signs, and any other thing or condition then and there existing which would naturally have any influence upon human action." And at the close of the instructions relating to emergency the court used this language: "Whether the act in question is an act of carelessness or an act of due care is a question of fact to be determined by the jury, taking into consideration all of the circumstances. That brings it back to the same question which I submitted ... how would the average person of ordinary prudence have acted under the same circumstances and conditions which confronted the parties in these cases there at the time and just before the accident." It seems clear that the court referred both to the emergency and to the descent of the hill in this reference to the time of the accident and to that immediately preceding it.

It may be further noted that the plaintiff Susan's care was an issue. There was no negligence on her part in the emergency. The evidence upon the issue concerned her conduct while the defendant was driving down the hill. The court compared and contrasted the defendant's duty and conduct while thus driving with hers, it is true in general terms, but in such manner as to indicate the defendant's liability if the accident resulted from a negligent descent of the hill.

Nowhere is it suggested or intimated in the charge that due care in the emergency was a defence if the defendant negligently brought about the emergency. It may be granted that the care required in the emergency was explained without reference to the cause of the emergency. But elsewhere in the charge the defendant's prior negligence was stated to establish liability if it was causal in producing the accident and if the plaintiffs were found free from fault. For the jury, finding the defendant at fault for causing the emergency but acting well in it, to find no causal liability, would be to disregard the instructions.

And it does not appear that the jury were likely to be misled, or misunderstand. The only purpose in explaining the emergency rule was to show that as a circumstance an emergency is to be considered in passing on the care to be taken in it. As a factor in causation any intelligent person would say that responsibility for an emergency meant responsibility for its developments. If one is at fault for incurring a danger, he must be at fault if the danger leads to injury. It does not appear that the jury would have better understood the law if they had been so told, and they were told nothing to the contrary.

The result is consistent with the rule announced in *Burke* v. *Railroad*, 82 N. H. 350, 361, that the jury shall be fully and correctly instructed upon the law, and with the rule set forth in *West* v. *Railroad*, 81 N. H. 522, 532, that instructions should be so framed as to convey the proper thought to the jury with reasonable certainty.

The difficulty with the plaintiffs' argument lies in its construction of the charge. It undertakes to isolate the instructions relating to emergency and to make them all that relate to liability. It ignores the instructions relating to conduct preceding the emergency. Giving due weight to the charge as a whole, every juror, paying it a layman's attention and possessed with ordinary intelligence, should have understood that the defendant was liable if the plaintiffs were not at fault and if she herself drove down the hill so negligently as to create the emergency which arose at the intersection of the roads.

This exception is also overruled.

*Judgments for the defendant.*

All concurred.