Merrimack, ⎱
Sept. 1, 1936. ⎰

JOHN WISUTSKIE *v.* RAYMOND C. MALOUIN.

*Willoughby A. Colby* (by brief and orally), for the plaintiff.

*Demond, Woodworth, Sulloway, Piper & Jones (Mr. Franklin Hollis* orally), for the defendant.

ALLEN, C. J.   In *Bennett* v. *Larose,* 82 N. H. 443, the court passed upon the scope of a motion to set aside a verdict on each of the two grounds that it is against the evidence and against the weight of the evidence.   In respect to the latter ground, it is now suggested that its limitations as thus laid down tend to defeat practical justice and that a more liberal policy in dealing with it will better secure correction of error.   It has accordingly been deemed advisable to review the subject.   The inquiry relates to procedural justice.   If a some-

what austere position appears to have been taken when greater liberality is regarded to be more effective in obtaining fairness of trial, the authority of precedents and customary practice should not be so strong as to stand in the way of the more certain assertion of justice. A fair trial is of first importance in the conduct of litigation, and the demand for the "best inventible procedure" seeks new methods and regulations thought to be in improvement. Procedural law and rules of court have some relationship. *Lisbon* v. *Lyman*, 49 N. H. 553, 571, 588, 604, 605; *Tuttle* v. *Dodge*, 80 N. H. 304, 312.

The discussion in the *Bennett* case of the weight of evidence as against a verdict has produced some misunderstanding. The questions whether a verdict has any evidence to support it and whether it is supported by the weight of the evidence, are both in their real nature inquiries of fact. Evidence on an issue is or is not sufficient to warrant the finding on it, and the finding does or does not have a preponderance of evidence in its favor. But while inquiry into the weight of evidence is treated as matter of fact, the question of sufficient evidence is dealt with as matter of law. The result is that while this court and the trial court consider the latter question by common and the same tests, the trial court's conclusion respecting the weight of evidence is a finding and not a ruling. This court may only say, on exception to the finding, whether there was any reasonable evidence which permitted it. It was not intended by the *Bennett* case to invoke any new or special rules to govern the trial court in its consideration and action upon it. As the *Bennett* case says (448): " . . . the rule which allows a verdict to be set aside upon a motion directed against the weight of the evidence, is designed to cover only flagrant cases when there is some conflicting evidence, but where such evidence is so preponderantly in favor of the losing party as to disclose mistake, partiality or corruption on the part of the triers of fact." Omitting the suggestion of flagrancy, the statement is in practical accord with a conventional view which has been expressed in many cases. And the trial court's finding is final, unless as matter of law there is no evidence to warrant it. *Lavigne* v. *Lavigne*, 80 N. H. 559, 561. "This court has no jurisdiction of questions of fact determined in the superior court by the presiding judge. The only questions that can be raised here are (1) whether there was any evidence in support of the finding, and (2) whether the finding clearly appears to involve a plain mistake." *Marshall* v. *Morin*, 79 N. H. 351, 352. Other cases make the distinction. *Ingerson* v. *Railway*, 79 N. H. 154, 159; *Stowe* v. *Payne*, 80 N. H. 331, 333; *Cadorette* v. *Markarian*,

80 N. H. 591; *Morrell* v. *Gobeil*, 84 N. H. 150, 151. The court in *State* v. *Wren*, 77 N. H. 361, 367, announced the principle in this language: "The verdict of a jury or the conclusions of a referee can only be set aside on this ground [as against the weight of the evidence] where it conclusively appears that the trier of fact unwittingly fell into a plain mistake, or that the verdict was produced by passion, partiality, or corruption. The same rule applies when a finding of fact made by the presiding judge . . . is attacked as against the evidence." The context and citations show clearly that no rule was thereby imposed upon the trial court in control of its action when a claim that a verdict is against the weight of the evidence is addresssd to it. In *Simes* v. *Atwell*, 85 N. H. 537, no attention was given to such a claim except in its aspect as presenting a question of law. It is said in the opinion: "The question of the substantially conclusive nature of the proof, so that no reasonable man could fail to find in favor of the defeated party, may be raised in this way." This statement refers only to an exception to the trial court's finding. Any thought that the *Bennett* case restricts the trial court in its fact finding functions is misconceived.

The only case found which treats the issue of the weight of evidence as matter of law when it is before the trial court is *Doody* v. *Railroad*, 77 N. H. 161. The opinion upon the point states that the law does not "authorize the court to weigh the evidence, consider conflicting testimony, or pass upon the credibility of witnesses—clearly the peculiar province of the jury—but to determine in view of all the circumstances disclosed whether the jury have properly performed their duty under the instructions of the court . . . ". Further, the opinion reads: "The inquiry in such cases is, not whether the judge acting as a juror would or would not have come to the conclusion returned by the jury in their verdict, but whether reasonable men charged with the duty of finding facts from the evidence, under the court's instructions as to the law applicable to the case, could come to that result."

To adopt this declaration of the rule would be to do away with all consideration of the weight of evidence in distinction from the issue of any evidence. This issue of any evidence is resolved by determining "whether reasonable men . . . could come to" the result reached from the evidence, and to resolve the issue of the weight of evidence by the same test would entirely destroy its standing. None of the cases cited to support this proposition of the *Doody* case appear, on examination, to do so.

As to the trial court's duty in determining whether a verdict is against the weight of the evidence, much trouble has been encountered in formulating a precise statement of it. It is a feature of a jury trial for the trial judge not only to see that the trial is fairly conducted but also to correct or vacate what turns out to be an unfair result. To inspect the product is no less a duty than to oversee the process of production. But it is difficult to draw a sharp and precise line between the jury's province to pass upon the weight of the evidence and the trial court's authority in respect to it. Various tests have been laid down.

In *Wendell* v. *Safford*, 12 N. H. 171, 178, 179, the court expressed this view: "Where the verdict is decidedly against the weight of evidence, so that it is apparent that the jury must have misunderstood or totally disregarded the instructions of the court thereon, or must have neglected to consider the facts, and overlooked prominent and essential points in the evidence, where it is such a verdict that twelve honest and intelligent men would not have returned it, it is the duty of the court to set it aside . . . . But where presumptions are to be raised, and inferences drawn, and evidence is to be weighed, the verdict will not be set aside, although the court might have decided the other way upon the facts."

In *Lisbon* v. *Bath*, 21 N. H. 319, 335, the rule was announced in this statement: "We do not interfere with the verdict of a jury to set it aside as against evidence, unless we are well satisfied that it has been procured through corruption, or manifest mistake in the consideration and application of the evidence, and that substantial justice has not been done."

In *Clark* v. *Society*, 45 N. H. 331, 334, the statement is: ". . . the verdict will not be set aside, unless it is so decidedly against the weight of evidence as to make it apparent that the jury must have been misled, or have failed to consider intelligently the evidence laid before them, or the instructions given by the court . . . the evidence of mistake or misconduct ought to be of a very cogent nature, and such as to satisfy the court fully that the verdict was such as twelve honest and intelligent men could not have returned."

It seems confusing that the idea of mistake, partiality or corruption should be made an element for the court's consideration. It is advanced, however, in a majority of the cases in which the trial court's authority and duty has called for statement. These reasons, of mistake, partiality, and corruption, for setting aside a verdict are distinct from the ground that the verdict is against the weight of the

evidence. It may be said that if the verdict is not supported by the weight of the evidence, a mistake has been made. But that is no more than saying that error exists. If the evidence contrary to the verdict is so weighty that the verdict should be vacated, that is the reason for vacating it. Why the evidence was not properly treated, may be a collateral inquiry, but it is not the immediate one. Whether it was, is. The mistake may be explanatory or descriptive of the erroneous verdict, but it is not directly probative of it. The inquiry is of relation between the evidence and the verdict. Except in cases where mistake is alleged as the ground of the motion, it is arguing backwards to say that mistake shows the error. Mistake vitiates a verdict, and so also does a contrary weight of evidence. Each is a separate ground. Where the weight of evidence lies is not shown by reasons disregarding it. To introduce the subject of mistake, or partiality or corruption, in helping to show the conflict between the evidence and the verdict is to cloud the issue.

In *Lawrence* v. *Towle*, 59 N. H. 28, 30, the court announced the rule thus: "A verdict will not be set aside as being against the weight of evidence, unless the preponderance was so great as to make it apparent that the jury were misled, or failed to consider intelligently the evidence laid before them." With the qualification that it must appear clearly and definitely that the jury did not act properly in its consideration of the evidence, this statement is regarded as accurately marking out the trial court's duty in passing upon the issue.

As a corollary, it may be remarked that in consistency the same rule should be applied to motions based upon a claim of excessive or inadequate damages. So far as a different test was employed in *Andrew* v. *Goodale*, 85 N. H. 510, and in *Gilbert* v. *Desmarais*, 87 N. H. 150, and is thus at variance with the views herein stated, it is not to be followed.

From the foregoing discussion it follows that the two questions to be answered in the case here are (1) whether the evidence for the plaintiff is conclusive in his favor, and (2) whether the verdict was conclusively against the weight of the evidence. If the second question is answered in the negative, the first one must be answered in like manner. If, in respect to the second question, the trial court's finding was a reasonable one, it may not be disturbed.

The defendant's car was proceeding northerly over the Daniel Webster Highway in Concord on a straight cement stretch. With a clear view ahead of him of over 1000 feet and with no approaching car in his sight he undertook to pass a green colored car on its left side.

The green car was traveling at about 30 miles an hour. As the defendant caught up with it, the driver, to prevent being passed, increased its speed to about 50 miles an hour and gradually turned it towards the left, thus crowding the defendant towards the left edge of the left lane. When he came abreast with the green car the defendant observed a car 750 to 900 feet distant and approaching from the north "much faster" than his. There was a gravel surface on the left of the cement. The defendant, thinking he could not turn back into the right lane either ahead of or behind the green car in season to avoid the approaching car, turned to the left upon the gravel surface, checking his speed in his progress. The gravel surface was soft or loose, and he could not control his car's direction in passing over it. After going 50 to 75 feet over this surface his car struck a telephone pole 14 feet from the left edge of the cement. There was testimony that three or four cars preceded the green car in its northerly course.

When the defendant turned into the left lane to pass the green car he was findably 600 feet from the pole his car ran into. He testified to a distance of 150 to 200 yards. The car approaching him was then findably over 1200 feet distant. He testified to a distance from it of 250 to 300 yards when he was half way to the pole. It took at least 4 seconds to travel to the half way point, and the approaching car, at its estimated speed, traveled a greater distance in that time.

As the green car was traveling only 30 miles an hour when the defendant turned out into the left lane to pass it, negligence as a matter of law in undertaking to pass it is not to be found. If other cars preceded the green one, it was findably at a considerable distance behind them. Its speed was increased to 50 miles an hour while the defendant attempted to pass it, from which it may be inferred that any other cars were so far ahead that they did not make the defendant's attempt unsafe. It was not shown that to pass the green car the defendant would also have to pass the cars ahead of it before returning to the right lane.

The defendant not being necessarily chargeable with negligence in initiating the attempt to pass the green car, he was findably not chargeable for the emergency which developed. The conduct of the driver of the green car clearly was reasonably to be considered efficiently causal of the emergency. No evidence supports a finding that the conduct was to be expected by the defendant.

It is claimed that the defendant was demonstrably in fault for the emergency on the ground that he persisted in his attempt to pass the

green car and raced along with it for some time while its speed was increased.

Until he reached its side, with no car approaching in his view ahead of him of a long stretch of straight road, his speed of 50 miles an hour, attained in his undertaking to pass the green car, was not excessive as matter of law. While the speed of the green car was being increased during the progress of the undertaking to pass it, the distance traveled during the undertaking might reasonably be found to be less than 400 feet. How much of this distance was traveled before the defendant realized the purpose of the driver of the green car not to let him pass, was not definitely shown. It took not over 7 seconds to travel the distance covered in the attempt. It was fairly for the jury to say if negligence was proved because the defendant did not sooner give up the attempt.

When the defendant first saw the car which was approaching him, he was abreast of the green car, but, as the evidence has tendency to show, not until then. While his testimony of distances is in some conflict, it is reasonable to find that the pole was from 150 to 200 feet ahead of him when the green car and his were thus side by side and that he was 50 to 75 feet from the pole when he applied his brakes and entered upon the gravel surface. At his speed of 50 miles an hour he would travel about 150 feet in 2 seconds. That length of time is not an undue allowance for required promptness of action. Inasmuch as it may reasonably be found that he desisted in his attempt to pass the green car as soon as he fully caught up with it and did not until then see the approaching car, the claim of racing with the green car at his side might fairly be found unsustained.

In the emergency the green car's speed of 50 miles an hour prevented the defendant's entrance into the right hand lane ahead of it. His own speed was then the same as that of the green car, while that of the approaching car was estimated to be higher. To give the approaching car its right of way over its lane, he drove his car upon the gravel surface at his left, thinking it safer than to take the time to reduce his speed until he could reënter the right hand lane behind the green car. His choice of action might be found to be in good judgment, and his operation of his car after entering upon the gravel surface was doubtfully careless.

Since the evidence of the defendant's negligence is not so overwhelming as to conclusively show that the jury did not properly weigh it, the trial court's finding that the verdict was not shown to be opposed to the weight of the evidence was properly made. Still

less, therefore, may it be claimed that the evidence of negligence compelled its inference. The motion to set aside the verdict was rightly denied on both of its grounds.

*Exception overruled.*

All concurred.